IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ⎯⎯ D.C.
05 MAY -9 AM 8: 34

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

| | |
|---|---|
| ROBERT SCOTT LEWIS, | ) |
| Plaintiff, | ) |
| v. | ) No. 03-2405 Ml/An |
| SHELBY COUNTY GOVERNMENT, and Sgt. J.L. MAYES, individually and in his official capacity, | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants' Motion for Summary Judgment, filed on December 30, 2004.[1] Plaintiff responded to Defendants' motion on March 7, 2005.[2] Defendants filed a reply to Plaintiff's response on March 23, 2005. For the following reasons, Defendants' motion is GRANTED.

---

[1] Defendants filed a separate Statement in Accordance With Local Rule 7.2 in Support of Rule 56(B) Motion for Summary Judgment on December 30, 2004. Defendants also filed a Supplemental Brief in Support of Defendants' Motion for Summary Judgment and an Amendment to Defendants' Statement in Accordance With Local Rule 7.2 in Support of Rule 56(b) Motion for Summary Judgment on January 6, 2005.

[2] The Court granted Plaintiff an extension until March 7, 2005, to respond to Defendants' motion. Plaintiff filed an errata to his response, a supplemental memorandum, and a response to Defendants' statement of facts on March 9, 2005. Plaintiff then filed a second errata to his supplemental memorandum on March 18, 2005.

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 5-9-05

## I. BACKGROUND

The instant case arises from the arrest of Plaintiff Robert Scott Lewis on May 29, 2002, by Defendant Sergeant J.L. Mayes. On May 28, 2003, Plaintiff filed a complaint alleging abuse of process, false arrest, malicious prosecution, unreasonable seizure, and false imprisonment in violation 42 U.S.C. § 1983.

Plaintiff Robert Scott Lewis owns and operates the Raleigh Feed Store, located in Memphis, Tennessee. (Cplt. ¶ 6.) On or about April 20, 2002, it came to the attention of Shelby County law enforcement officials that three horses owned by Arnita and Melissa Stine were in poor condition and had been neglected by their owners. On or about April 23 or 24, 2002, Plaintiff picked up the horses from the Stines and transported them to his farm in Hardeman County, Tennessee.[3]

Between April 26 and May 29, 2002, Plaintiff fed and watered the horses, provided them with antibiotics, and generally nursed them back to health. The condition of the horses greatly improved from Plaintiff's efforts.

Also between April 26 and May 29, 2002, Sgt. Mayes informed Plaintiff that he was investigating whether or not the Stines should be charged with animal cruelty regarding several animals,

---

[3] Plaintiff contends that the Stines gave Plaintiff the horses in exchange for wiping out their feed bill of over $1,000, and that he was given the registration papers and cogging for the horses. (See Pl.'s Resp to Defs.' Statement of Facts at 2.)

2

including the horses that had been taken by Mr. Lewis to his farm in Hardeman County. During that time frame, Sgt. Mayes contacted both Plaintiff and his sister, Connie Page, to inform them that Plaintiff needed to return the horses to Shelby County so that Sgt. Mayes could complete his investigation of the Stines and so that the horses could be examined by a veterinarian.[4] Also during that time frame, Sgt. Mayes explained to Plaintiff that he would bring a veterinarian and meet Mr. Lewis at the Shelby County line so that the veterinarian could examine the horses. Plaintiff did not agree to that request.

On or about May 29, 2002, Sgt. Mayes swore out an Affidavit of Complaint and testified before the Hon. Rhonda Harris, General Session Judicial Commissioner, who, after examining Sgt. Mayes, signed an arrest warrant charging Mr. Lewis with tampering with or fabricating evidence in violation of Tennessee Code Annotated § 39-16-503. (Attached as unnumbered exhibit to Defs.' Reply Brief in Supp. of Summ. J.) That arrest warrant was issued on May 29, 2002, at 10:54 a.m. and docketed in the General Sessions

---

[4] Plaintiff contends that Sgt. Mayes threatened to put him in jail if he did not return the horses, and that Plaintiff informed Sgt. Mayes that he did not have the proper equipment to transport the horses to Shelby county, but would have either allowed a veterinarian to come to his farm to inspect the horses or brought to horses to Shelby County if provided with the appropriate equipment. (See Pl.'s Resp to Def.'s Statement of Facts at 3-7.)

3

Clerk's Office. The Affidavit of Complaint accompanying the warrant states as follows:

> Personally appeared before me Sgt. J.L. Mayes and made an oath that on or about the 23rd day of April, 2002, in said County, and within the jurisdiction of the Criminal Court of Shelby County, Tennessee, one Robert S. Lewis, Age 40, [s]ex male, whose last known address is 4284 Fayette Rd., did unlawfully commit the offense(s) of Tampering with or fabricating evidence 39-16-503 and the essential facts constituting said offense(s) and the source of the affiant's information are as follows: On 04-23-02 the affiant met with officers from the Memphis Animal Shelter in reference to an animal cruelty complaint at 8895 E. Shelby Dr. Upon arrival at the location[,] officers spoke with the homeowner who stated that Arnita Stine was renting the barn area from them for her horses. Owner of the property was advised of complaints that was [sic] received by the shelter and gave officers permission to enter the barn to check on the horses. Upon entering the barn[,] officers found three horses inside the barn one was able to get fresh water and graze (see attached copy) in the pasture while two of the horses were confined without water or any feed inside the barn. The confined horses were underweight and there [sic] coat was dull and had areas of hair loss. Mrs. Jones also advised the officers that one horse had died over the weekend. On 04-25-02 a warrant was obtained on Arnita Stine and her daughter Melissa Stine for cruelty to animals. Officers returned to the address on Shelby Dr. with Rebecca Coleman DVM to check the horses['] condition from a professional stand point and found the horses had been removed from the property. After further investigation it was learned that the above defendant had taken the horses from the property to his sisters['] property in Hardeman County. Affiant spoke with the defendant and advised him of an on going investigation about the horses and he refused to cooperate with the affiant on bringing the horses back to Shelby County, defendant stated to the affiant "why don't y'all leave Mrs. Stine the [expletive] alone". Defendant was advised of charges that he could be facing and still refused to cooperate. This all occurred in Shelby County, T[N].

4

The affidavit is signed by Sgt. Mayes before the Hon. Rhonda Harris and dated May 29, 2002.

On May 29, 2002, between 11:00 a.m. and 12:00 noon, Plaintiff was taken into custody at his Raleigh Feed Store by Sgt. Mayes and Sgt. Ray Sides. Mr. James Gardener was in the Raleigh Feed Store on May 29, 2002, and witnessed the arrest of Plaintiff. Sgt. Mayes then delivered Plaintiff to the Shelby County Sheriff's Fugitive Squad at approximately 12:35 p.m.[5] Plaintiff was released on his own recognizance at 2:03 a.m. on May 30, 2002. The charges against Plaintiff were eventually dropped and he was not prosecuted for the crime for which he was arrested.

---

[5] Plaintiff contends that, at some point on May 29, a second warrant was issued for theft of property over $500 or $5,000. However, it is undisputed that Plaintiff never saw any arrest warrant charging him with theft of property. (See Pl.'s Resp. to Defs.' Statement of Facts at 19.) Moreover, it is also undisputed that reviews of the relevant official records, including a review by Plaintiff himself, establish that no warrant for theft of property was issued. (See id. at 21.) Further, it is undisputed that on May 29, 2002, Shelby County Pretrial Release determined that as of 7:30 p.m. on May 29, 2002, the only warrant issued concerning Mr. Lewis was the warrant charging him with tampering with or fabricating evidence issued by Hon. Rhonda Harris on May 29, 2002. (See id. at 15.) Plaintiff maintains that there exists a warrant charging him with theft of property based upon: Sgt. Mayes' purported statements during the arrest; Mr. Gardner's testimony that he thought he saw such a warrant in Sgt. Mayes' hand during the arrest; and Plaintiff's assertion that a female at the Sheriff's Department ripped up a piece of paper that Plaintiff contends was that warrant, stating "this is the wrong one" (See id. at 21). Plaintiff points to no evidence in the record, however, to indicate that he or Mr. Gardner have any personal knowledge of such a warrant. Accordingly, their assertions are inadmissible under Federal Rule of Evidence 602.

5

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Supreme Court has explained that the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1989).

So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the

6

truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

### III. ANALYSIS

Defendants move for summary judgment regarding all of Plaintiff's claims because the arrest of Plaintiff was assertedly supported by probable cause and that no alleged constitutional violations can be traced to any Shelby County municipal policy or custom. In his response to Defendants' motion, Plaintiff contends that summary judgment is inappropriate because there purportedly exist genuine issues of material fact regarding whether Sgt. Mayes arrested Plaintiff for theft of property rather than tampering with evidence and regarding whether Shelby County properly trained Sgt. Mayes regarding procedures for conducting a proper arrest and seeking an arrest warrant.

Section 1983 does not create substantive rights, but rather serves as a "method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). To establish a prima facie case under Section 1983, a plaintiff must prove two elements: (1) that the government action occurred "under color of law" and (2) that the action is a deprivation of a constitutional right or federal statutory right. Parratt v. Taylor, 451 U.S. 527, 535 (1981); Block v. Ribar, 156 F.3d 673, 677 (6th Cir. 1998). "The first step in any such claim is to

7

identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271 (1994).

In his Complaint, Plaintiff alleges that he was subject to malicious prosecution in violation of the Fourteenth Amendment to the United States Constitution (Pl.'s Cplt. ¶ 31), as well as false arrest, false imprisonment, unreasonable seizure, and abuse of process in violation of the Fourth Amendment. (Pl.'s Cplt. ¶ 22.) The Court will analyze these claims in turn.

### A. Malicious Prosecution

In his Complaint, Plaintiff asserts that his claim for malicious prosecution arises under the Fourteenth Amendment.[6] In order to assert a claim for malicious prosecution, the Plaintiff must have actually been prosecuted for a criminal offense. See McKinley v. City of Mansfield, __ F.3d __, 2005 WL 819969, *19, No. 03-4258 (6th Cir. April 11, 2005). A claim for malicious prosecution may not be asserted solely based upon a police officer's turning over evidence to prosecuting authorities. Id. Even when a prosecution is undertaken, a police officer may not be held liable for malicious prosecution where he did not make the decision to prosecute. Skousen v. Brighton High School, 305 F.3d 520, 529 (6th Cir. 2002). Furthermore, where there is

---

[6] A claim for malicious prosecution generally falls within the Fourth Amendment, however, rather than the Fourteenth Amendment. In his response to Defendants' motion, Plaintiff cites no legal authority to indicate that his claim for malicious prosecution is properly stated under the Fourteenth Amendment.

8

probable cause to prosecute, an action for malicious prosecution will not lie. McKinley, 2005 WL 819969 at *19.[7]

It is undisputed that Plaintiff was never prosecuted for the crime for which he was arrested.[8] Accordingly, Plaintiff may not, as a matter of law, assert a claim of malicious prosecution against Defendants.

### B. False Arrest, Unreasonable Seizure, False Imprisonment, and Abuse of Process

Plaintiff contends in his Complaint that Defendants are liable to him for an unreasonable seizure of his person under the Fourth Amendment, as well as false arrest, false imprisonment and abuse of process. "[T]he claims of false arrest and false imprisonment by police officers acting while on duty are essentially the same since the alleged false imprisonment arises out of and logically follows the arrest of plaintiffs." Ross v. Meyers, 883 F.2d 486, 487 (6th Cir. 1989)(citation omitted). The Court therefore construes Plaintiff's claims for false arrest, false imprisonment, unreasonable seizure, and abuse of process as one claim asserting false arrest under the Fourth Amendment.

---

[7] The Court finds below that probable cause existed for Plaintiff's arrest.

[8] Although Plaintiff contends that he was originally arrested for the crime of theft of property, he points to no evidence in the record that he was ever prosecuted for such a crime.

9

The right to be free from an arrest without probable cause is clearly established. See California v. Hodari D., 499 U.S. 621, 624 (1991); Holt v. Artis, 843 F.2d 242, 246 (6th Cir. 1988). It is also well established that an officer violates a plaintiff's constitutional rights by requesting a warrant which allegedly leads to a false arrest only when the officer states a deliberate falsehood or acts with a reckless disregard for the truth. Ahlers v. Schebil, 188 F.3d 365, 373 (6th Cir. 1996). There can be no claim for false arrest under § 1983 where sufficient probable cause existed to support an arrest. Ahlers, 188 F.3d at 374. Accordingly, to prevail on such a claim, Plaintiff must prove that the arrest was without probable cause.

Here, it is undisputed that Sgt. Mayes obtained a warrant for Plaintiff's arrest for tampering with evidence and fabricating evidence. Accordingly, a judicial officer determined that Plaintiff's arrest was supported by probable cause. Further, having reviewed the entire record and the parties' submissions, the Court finds that no genuine issues of material fact exist regarding whether probable cause actually existed to arrest Plaintiff for the offense for which he was charged.[9]

---

[9] Even assuming, as Plaintiff contends, that Sgt. Mayes made comments during the arrest that Plaintiff was being arrested for theft of property, that asserted fact has no bearing upon whether probable cause existed to arrest Plaintiff for tampering with and fabricating evidence.

10

Additionally, Plaintiff points to no evidence in the record to show that Sgt. Mayes secured the warrant against Plaintiff by stating any deliberate falsehood or acting with reckless disregard for the truth. Accordingly, Plaintiff's claims against Sgt. Mayes under § 1983 must fail.[10]

A municipality may, in turn, be held liable under 42 U.S.C § 1983 only if a constitutional or federal statutory violation by the individual officer involved in the incident is established. See Parratt, 451 U.S. at 535; Block, 156 F.3d at 677. Therefore, Plaintiff may only assert a claim against Defendant Shelby County if it is established that Defendant Sgt. Mayes committed a constitutional violation. The Court has found that Sgt. Mayes did not commit any constitutional violation against Plaintiff. Accordingly, Plaintiff's claim against Shelby County must fail.

Even if Sgt. Mayes had committed a constitutional violation, however, a municipality may be held liable under Section 1983 only if the municipality itself caused the constitutional deprivation. Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690 (1978). Before a local governmental unit can be held liable for injuries pursuant to Section 1983, "a plaintiff

---

[10] The Court further finds that Plaintiff's claims against Sgt. Mayes would also be barred by qualified immunity, since Plaintiff points to no evidence in the record to show that Sgt. Mayes did not act within the objectively reasonable belief that his actions were lawful or that Sgt. Mayes knowingly or intentionally violated Plaintiff's constitutional rights. See Ahlers, 188 F.3d at 372-73.

11

must show that his injuries were the result of some 'policy or custom' attributable to the governmental entity." Leach v. Shelby County Sheriff, 891 F.2d 1241, 1245 (6th Cir. 1989) (quoting Monell, 436 U.S. at 690). A municipality is not liable under Section 1983 for an injury inflicted solely by its employees or agents, but rather it is only liable when the "execution of the government's policy or custom ... inflicts the injury." City of Canton v. Harris, 489 U.S. 378, 385 (1989). The governmental entity is liable under Section 1983 only when the entity itself is a "moving force" behind the deprivation of constitutional rights. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

The "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Monell, 436 U.S. at 690. Further, the policy or custom must evidence deliberate indifference on the part of the municipality. Monell, 436 U.S. at 388 ("[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.")

Here, Plaintiff contends that Defendant Shelby County failed to train Sgt. Mayes regarding the proper method of securing a warrant and making an arrest. The only evidence to which Plaintiff points to support this argument is a list of courses taken by Sgt. Mayes, which does not include a course whose title indicates that it involves securing warrants and making arrests. (See Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. A.) It is undisputed, however, that Sgt. Mayes received on the job training regarding the proper methods of securing a warrant and making an arrest. Plaintiff points to no evidence in the record to show that such training was inadequate, let alone that it amounted to a policy or custom that evidenced a deliberate indifference towards Plaintiff. Accordingly, Plaintiff's asserted § 1983 claim against Defendant Shelby County must fail.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and Plaintiff's claims are DISMISSED.


So ORDERED this 6th day of May, 2005.

JON P. McCALLA
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 93 in case 2:03-CV-02405 was distributed by fax, mail, or direct printing on May 9, 2005 to the parties listed.

---

Eugene C. Gaerig
LAW OFFICES OF EUGENE C. GAERIG
100 N. Main Street
Ste. 3118
Memphis, TN 38103

Kathleen L. Caldwell
LAW OFFICE OF KATHLEEN L. CALDWELL
2080 Peabody Ave.
Memphis, TN 38104

Honorable Jon McCalla
US DISTRICT COURT